Our next case for argument today is Appeal No. 25-1483, Joliet Avionics v. City of Aurora. Good morning. May it please the Court. My name is Thomas Scherchl. I represent the appellant, J.A. I would like to have eight minutes for my argument and reserve two minutes for rebuttal. There are two claims before the Court. Count 1 was brought under Section 1983. Count 2 was brought for breach of contract. We submit the District Court erred in granting the City's summary judgment on both counts. We ask the Court here to reserve to reverse and remand for further proceedings. First, Count 1. The District Court held that the federal grant assurances and the minimum standards were not made part of the lease, but the cases relied upon by the District Court were based on a completely different question, which resulted in the Court employing the wrong analysis. Clearly, context matters, and in this case, context is critical. It's certainly true that mere reference to a third-party contract or a third-party document does not necessarily draw the terms of that contract or document into an agreement. That's certainly the case, and that's certainly the law. But that's not what was before the Court. The lease here incorporated all applicable state and federal laws and grant assurances and Aurora's regulations, the minimum standards, pursuant to the terms of the lease, as well as by operation of law. Appellant was not seeking to adopt the terms of a third-party contract or a third-party document. That's the main difference. The lease in this case specifically provided that it would be subject to all applicable state and federal laws and subject to the minimum standards. Now, the City acknowledges that the minimum standards are airport regulations, and that becomes important. The City also acknowledges that page 37 of its brief, it had a responsibility to protect its tenants from unreasonable or unfair competition, and interestingly, that requirement is only found in the minimum standards. The City admitted it filed under oath a third and fourth amended verified complaint alleging based on the exact same clause in a comparator's lease. Counsel, I understand your arguments with incorporation here, and we have different universes. Some of them may be a little bit closer to ordinances, and that's a different question. But where's the breach? My understanding is the City sued your competitor. The City sued the competitor before this case even existed, and in that suit, but that was based on the fact that they alleged that the competitor breached the minimum standards. And then when we filed suit within months of that saying, well, the City has breached the minimum standards, they said, well, it's not a breach except by the tenant. If it's the City, then the breach is irrelevant. So you want the City to enforce the minimum standards. They went to court to try to do that. They want the City to enforce the minimum standards equally towards both of its FBOs. So the result of that, if I understand this, is that any time an airport gets into a dispute with an FBO, as a practical matter, any other FBOs at that airport would have to be at the table, right? So whether you're talking about changing a rent term or, you know, whether the tanks are above or below ground or you're delaying construction of a promised project, everybody gets the same. Is that right? No, Your Honor, I don't think so. I think that would be impossible. The leases need to be functionally the same. I think they need to be functionally the same at the end of the day. The terms don't have to be identical, certainly not. Decided by a jury or by the FAA? Well, no, in the civil case, by a jury. The FAA has a totally separate jurisdiction over the enforcement of its regulations, and the FAA cannot award monetary damages to anybody or do anything other than say that the City is not in compliance. But they can't do anything for the litigants. Multiple courts have held that even regulations are very critical and need to be enforced. In fact, the Ninth District, which is certainly in our briefs in the Rehart v. Clark case, said that it's well settled that existing laws are read into contracts in order to fix the rights and obligations of the parties, and this is also true of valid regulations having the force and effect of general application of laws. So the City has admitted that the minimum standards are regulations, and in Jack Spring v. Little, the Illinois Supreme Court held that even code regulations, which are not statutes or ordinances, are considered regulations and are enforceable. So it's our position that this particular case, first of all, we shouldn't have gotten in, the court shouldn't have gotten into this discussion of whether or not it was ambiguous or wasn't ambiguous that these terms were subject to. The term subject to is used in numerous situations, and that's why context matters. We buy a home sometimes subject to a home inspection. We buy a car perhaps subject to a mechanics examination. Those are not third-party contracts or third-party documents. In this case, the lease was subject to all of the existing laws and regulations and statutes, and to be quite candid, who would have believed, what party would have believed that this was not what the lease meant? And in fact, if we said that this was somehow ambiguous but in context not ambiguous, then it gives the court certainly the right to look and to see that while the court's tasked to find the intent of the parties, it gives the court certainly the right to say, well, if this is the case, then why did you, City of Aurora, say that the lease was part, the minimum standards were part of the lease when you sued Luminaire? And you're saying they're not now. Excuse me, Mr. Schroepfel, but in this kind of situation I would think arises a lot, right? Is that right, where you have airport administrators, more than one FBO, different contracts reached over different times and different market conditions and so on, right? Yes, sir. I don't know if it happens many times, but I'm sure it happens, yes. Can you point us to other cases in which courts have said this obligation of non-discrimination is enforceable in the way you're trying to enforce it here? Certainly the Gary Jett case, which was a district court case admittedly, said that those allegations held water and it should be settled. Right. Anything else? I'm sorry. I would expect there to be scores at least of these cases around the country. I would too, Your Honor, and there simply aren't because if there were, I'm sure both sides would have found them. I would have thought so too. I don't suggest that the city doesn't have discretion. Most certainly they do. But they have to use that discretion in a reasonable fashion. You can't use the discretion in such a way that you've made the situation completely uncompetitive, whether the grant assurances reference that or not. That simply would be not acceptable in our society by our way of laws. So, based on that, I'm asking that the court either reverse and award summary judgment to JA on the reach of contract count or send this matter back for further proceedings on both grounds. Did you move for summary judgment? I'm sorry, Judge. Did you move for summary judgment in the district court? Yes, sir. Thank you. Okay. I'd like to reserve my time for rebuttal. Yes, Mr. Shorter. Of course. Thank you. Okay, Ms. Shannon. May it please the court. My name is Colleen Shannon. I represent the city of Aurora. This case boils down to a commercial airport tenant that freely negotiated a lease, then later released all prior claims pursuant to a 2015 amendment and now asks this court to constitutionalize a lease dispute and rewrite its contract. The undisputed record forecloses both theories. I'd like to address both claims. So, first, JA's class of one claim does not even reach the city's proprietary lease decisions at issue here. And even if it did, JA cannot satisfy either element. And second, the breach of contract claim fails because the minimum standards and grant assurances were not incorporated into JA's lease. And even if they were, they don't impose any obligations on the city that are enforceable by its tenants. Now, as to the equal protection claim, the threshold issue is whether a class of one claim can even reach the city's individual lease decisions here. And Enquist tells us it cannot. There, the Supreme Court recognized that the theory is a poor fit for state actions that by their nature involve discretionary decision-making based on a vast array of subjective individualized assessments. And although its holding was limited to the employment context, the reasoning suggests a much broader application to other contexts where the same sort of discretionary decision-making is involved. For example, we have seen in other circuits and according to this district extend Enquist to state contractor relationships. And the FBO lease relationship here is no different. The city was acting as a proprietor managing its airport, negotiating these leases freely with sophisticated FBOs that had the option to choose whether they wanted to accept these terms. This is not a case where the city was applying rules to the public at large. And now, even if JA could get past the Enquist issue and bring this claim, it would still fail on the merits. JA has a heavy burden here of showing it was similarly situated in all material respects to Luminaire and Carver. And the differences here are not subtle. We have leases that were negotiated decades apart for vastly different premises that are of different size and characteristics. For example, JA rents its buildings and hangars, whereas Carver and Luminaire own theirs. Also, when JA first came to the airport, there wasn't a fuel farm available for it to use, so it had to build one, and the minimum standards in place at the time required it to be above ground, whereas Luminaire had previously built an underground one and was allowed to continue to use that for a period of time. And then there was also vastly different investment structures involved in these leases. The city agreed to issue JA up to $10 million in tax-exempt special facility revenue bonds, but importantly, its lease did not contain any investment requirement, whereas Carver's lease requires it to invest $10 million, with penalties attached if it doesn't meet those investment thresholds. And the city did not issue any bonds to Carver. And the FAA itself has examined these leases twice and found that FBOs are not similarly situated, including most recently in the director's determination issued in October of 2025. In addition to that, JA utterly fails to negate every conceivable rational basis for the differences. All of the challenged lease terms here are rationally related to the deals each FBO struck based on its own circumstances at the times the leases were entered. And then I also just want to note briefly that even if JA could get past all of those hurdles, it still would have to establish municipal liability under Monell. This is something that JA doesn't even address on appeal, and likely because it is wholly inconsistent with this class of one theory. But in any event, it does supply an additional independent basis for affirming summary judgment on that count. Who is responsible for the relevant decisions, counsel, about how the city would treat Julian Avionics? For the lease decision? Yes. So the leases are entered into through the city's attorneys, and then it goes to the city council for approval. So the city council approves these contracts? Yes, ultimately. That sounds like the city council would be the relevant policymaker. Right? For Monell purposes? Sure. Yes. However, JA has not put forth any evidence to establish that there's this longstanding practice in the city of... You don't need a longstanding practice if you've got a decision by the policymaker. True. And in that regard, JA also has not put forth any evidence identifying a specific policymaker at issue here? Well, it's the city council. Right? And these contracts don't take effect without approval of the city council. True. However, again, there hasn't been any evidence of any other situations involving these lease determinations aside from JA's own lease. So its entire claim is just focused on its own individual treatment, and they have not put forth other examples of the city council treating any other FBO differently. I'm just suggesting that Monell may not be a particularly sturdy basis for defending this decision. You know, a lot of other arguments.  That's fair. That's fair. Turning now to the breach of contract claim, this claim just fails from the start because JA can't identify a lease provision that the city breached. Its entire theory depends on converting the minimum standards and grant assurances into enforceable contract terms, but that's simply not what the lease says. When you look to Section 13 of JA's lease, which it relies on for this incorporation theory, it specifically states this lease is subject and subordinate to all city ordinances and the minimum standards and shall be subject to the grant agreements. This does not evidence a clear and specific intent to make these documents part of the lease. Under Illinois laws, we know that subject to means subordinate to or limited by. It does not create affirmative rights or obligations. And, of course, mere reference to the documents also does not incorporate all of their terms, especially given the strong presumption against provisions that could have been included but were not. And the incorporation by law theory that JA has raised is equally flawed. Minimum standards and grant assurances are not generally applicable laws. They are airport regulations that set base level requirements for FBOs operating and conducting activities at the airport. And aside from that, the incorporation by law theory only applies absent contract language to the contrary. And here we have that language in Section 13 that directs exactly how the grant assurances come into play here. But even if they were incorporated into the lease, JA's claim still fails because the grant assurances first are agreements between the city and the FAA. There is no private right of action for JA to enforce them against the  And the minimum standards, again, set the base level requirements for commercial activities and tenants at the airport, which the city enforces at its discretion. They don't impose any obligations on the city. So it's legally impossible for the city to breach these minimum standards. And without a contractual duty running from the city to JA, there can be no breach. Is it the city's view here that the city gets to enforce minimum standards against the tenants but the tenants cannot enforce them against the city? Yes, that is our view. That takes care of the arguable inconsistency? That's your answer? The minimum standards explicitly apply to only commercial activities and tenants. And the FAA has, you know, agrees that the city has discretion in how it enforces them. And there are certain circumstances where it's permissible for the city to waive certain requirements or even delay compliance when necessary. But they are not, they do not need to be uniformly enforced. But more importantly, they do not impose any obligations specifically on the city and much less any obligations that would be enforceable by a tenant in any way. And so unless there are any further questions, we submit that the district court correctly resolved both claims here and ask that its judgment be affirmed. Okay, thank you, Ms. Shannon. Thank you. Mr. Scherchel, rebuttal. Your Honors, the bottom line is that the discrimination was rampant. We were, JA was required to put in an above ground fuel farm in 2007. There still isn't a fuel farm for a luminary successor. JA was required to buy liability insurance as well as environmental indemnity insurance. Luminary who had been sued was allowed to simply give a letter of indemnification, which was worth nothing more or less than the paper it was written on. The discrimination here was significant. And again, certainly the city has the right to prepare different terms on different leases, no question about it. But in the end, they must be reasonably fair to both sides. At the present time, pursuant to the briefs and pursuant to the report written by JA's economist, we're paying almost $500,000 more per year. Carver, luminary's successor, now pays approximately $46,000 per year for ground rent. While in the meantime, JA is paying a half a million dollars a year to the city and for its leasehold. Is it correct though that Carver owns its buildings and you all rent yours? Well, in fact, it's more than that, Your Honor. JA was required to buy a building, the BP hangar, for $4 million, donate it to the city, and then pay rent to use it. Well, our rent is our mortgage payments. It's rent equivalents. And not only that, but to fix up and repair the hangars that were owned by the city. So no matter how you look at it, it's gotten to a point where the competition is completely impossible. And that certainly is against the spirit of the grant assurances, the minimum standards, and also I would respectfully submit common sense in this case. I'd ask the court to reverse. Okay. Thank you, Mr. Scherchel. Thank you, Ms. Shannon. The case will be taken under advisement.